**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |  |
|---|---|---|
| KEVIN CODY and MUGE CODY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:16-cv-132 (AJT/JFA) |
| MANTECH INTERNATIONAL CORPORATION | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Defendant ManTech International Corporation (ManTech) replies as follows to the opposition submitted by plaintiffs Kevin Cody and Muge Cody to ManTech's motion for judgment as a matter of law or, in the alternative, for a new trial.

**I.   MANTECH IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

    **A.   The Evidence Of Causation Is Insufficient**

ManTech explained in its opening brief why the evidence presented at trial – viewed in the light most favorable to each of the Codys – fails to establish a prima facie case of causation under the anti-retaliation provision of either the False Claims Act (FCA), 31 U.S.C. § 3730(h) or the Defense Contractor Whistleblower Protection Act (DCWPA), 10 U.S.C. § 2409.[1]

---

[1] The Codys' respective burdens of proof differ as between the two statutes, as discussed in ManTech's opening brief and discussed further below. The Codys now argue that ManTech has waived the right to invoke the higher burden applicable under the FCA because it agreed to a jury instruction on causation that utilized only the more lenient DCWPA standard. This argument is

The Codys implicitly concede that there is no direct evidence that ManTech discharged either of them because they filed this suit. They argue unpersuasively that there is circumstantial evidence that Kevin Phillips had retaliatory animus against Kevin Cody, relying on Mr. Phillips' knowledge of Kevin Cody's 2012 pricing concerns and Mr. Phillips' testimony that he was "disappointed" that the Codys had sued ManTech. The Codys do not cite any evidence whatsoever that Michael Brogan and Dan Keefe, who made and approved the decision to lay off Muge Cody, harbored retaliatory animus against her.

The Codys do not contest, nor can they, that the time gaps between when ManTech learned of the existence of this suit and when it terminated their employments – 10-1/2 weeks in the case of Kevin Cody and 6 months in the case of Muge Cody – are too long to support the inference of a causal link between these events. *See Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (ten-week gap too long). Where the time between the protected conduct and an adverse action "is too great to establish causation based solely on temporal proximity, a plaintiff must present 'other relevant evidence ... to establish causation,' such as 'continuing retaliatory conduct and animus' in the intervening period." *Id.* at 643 (relying on *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). The Codys argue that they presented other relevant evidence sufficient to establish causation, but their contentions do not withstand scrutiny.

## 1.     There is no evidence of retaliation to buttress temporal proximity

The Codys argue that the evidence shows (1) their filing of this suit caused ManTech to place them on administrative leave; (2) being placed on leave made them vulnerable to termination;

---

disingenuous and unpersuasive. ManTech is not challenging the jury instruction to which it agreed. It is challenging the sufficiency of the evidence, which is a separate and antecedent issue, raised before the jury was instructed. The jury instructions do not affect the sufficiency of the evidence. Moreover, ManTech noted during trial that there was a dichotomy between how the Court should assess the sufficiency of the evidence and how the jury should be instructed.

2

(3) because they were on leave, they were not considered for, or eligible for, any alternative positions; (4) ManTech knew from the outset that it would never return the Codys to work; and (5) the Army eliminated the MRAP Program Manager position because ManTech placed Muge Cody on administrative leave.

It is undisputed that ManTech placed the Codys on paid administrative leave in response to learning of this suit. But "placing an individual on paid administrative leave does not constitute an adverse employment action … in the retaliation context." *Sturdivant v. Geren*, CIV.A. 1:09-CV-586, 2009 WL 4030738, at *6 (E.D. Va. 2009), *aff'd sub nom. Sturdivant v. McHugh*, 450 F. App'x 235 (4th Cir. 2010) (collecting cases). The Codys' remarkable argument attempts to transform a lawful, non-adverse employment action into the lynchpin of a retaliation claim. They seek "to accomplish by the back door that which is closed to [them] by the front door." *WLR Foods, Inc. v. Tyson Foods, Inc.*, 155 F.R.D. 142, 144 (W.D. Va. 1994). If the Codys' argument were to be accepted, employers accused of misconduct by employees would lose the "safe harbor" of placing the employee on paid leave while the accusation gets sorted out.

The law provides no support for the Codys' argument. Because the Codys cannot establish causation based solely on temporal proximity, they must present evidence of continuing retaliatory conduct and animus in the period between the disclosure of this suit and their terminations.[2] But ManTech placing the Codys on paid administrative leave was not "adverse" to them and so cannot be evidence of any animus against them.

---

[2] In *Lettieri v. Equant, Inc.*, for example, the plaintiff offered evidence of continuing retaliatory conduct and animus directed at her in the seven-month period between her complaint and her termination; further, after the decision was made to fire her (based on the supposed redundancy of her position), her supervisor sought immediate approval to hire a replacement for her. 478 F.3d at 650-51.

3

The other components of the Codys' argument are equally flawed. There is no support for the proposition that being placed on administrative leave made the Codys vulnerable to termination because their salaries became indirect costs. Kevin Cody's compensation was already an indirect cost before he was placed on leave, and it had been an indirect cost for many years. While Muge Cody's salary became an indirect cost when she was placed on administrative leave, this required cost accounting change (from direct to indirect) played no role in her termination. She was terminated because the Army eliminated the MRAP Program Manager position. Further, the Acting Program Manager, Nate Webster, whose salary was a direct cost, was terminated at the same time and for the same reason.

The Codys argue that, because their compensation was treated as indirect costs, they were not considered for any alternative position at ManTech and thus the jury could conclude that, by placing them on leave, ManTech circumvented, or negated, its policy of trying to identify alternative positions for employees whose positions are eliminated. This argument fails on multiple levels. First, it presupposes that the Codys already faced discharge and focuses on whether their employment might nonetheless have been maintained by shifting them to another position. Thus, this argument does not demonstrate that ManTech discharged the Codys for retaliatory reasons. Second, the Codys did not show that ManTech failed to follow its policy because they adduced no evidence that ManTech had any available positions that either of them might have filled. Third, even if ManTech failed to follow its policy, this would not be probative of retaliation unless the Codys showed that they were treated differently than other employees. *See Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 346 (5th Cir. 2007). The Codys adduced no evidence that they were treated differently than other, similarly situated, executives whose positions were eliminated during that period.

4

The contention that ManTech knew, when it placed the Codys on administrative leave, that it would never return them to their positions is a red herring. The Codys attempt to conflate being placed on administrative leave with their ultimate discharges by arguing that their fate "was sealed when ManTech learned of the Codys' suit and suspended them." (Codys' Opp. at 6). But, as a matter of employment law, placement on paid administrative leave is a neutral act regardless of whether it is followed by discharge or reinstatement. The causation issue turns on whether ManTech terminated the Codys' respective employments because they filed this suit, *i.e.* whether their fates were sealed when ManTech learned of this suit. The Codys cannot use the interim imposition of administrative leave to circumvent the time limits that the law imposes on proving causation through temporal nexus.

Finally, the contention that the Army eliminated the MRAP Program Manager position because ManTech placed Muge Cody on administrative leave is both unproven and irrelevant. As a matter of law, the Army's decision to eliminate the Program Manager position is not an adverse employment action that can be attributed to ManTech. Nor, as a matter of fact, can ManTech be responsible for the Army's decision because the undisputed evidence is that ManTech did not foresee it, much less seek to provoke it.[3] Further, contrary to the Codys' claim, Alex Urbina's testimony was insufficient to establish that the Army eliminated the Program Manager position because it found Nate Webster to be an ineffective stand-in for Muge Cody.

The Codys also spend a number of pages arguing that the "background" evidence regarding the events of 2012, 2013, and 2014, before this suit was unsealed, provides additional

---

[3] The Codys cite the undisputed testimony of ManTech executives that they were astonished by the Army's decision. Ex. 1 to Codys' Opp. (Testimony of Bonnie Cook) at 452:1-453:3 (Cook had "never seen the government eliminate the program management position from a contract and certainly not from a large contract. It's a very important position."); *see also* Ex. 1 to Codys' Opp. (Testimony of Dan Keefe) at 359:20-360:9 (the Army's decision "didn't make any sense").

circumstantial proof of causation. Their argument flies in the face of controlling Fourth Circuit precedent that was cited in ManTech's opening brief. "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) (quotation marks and citation omitted). In other words, alleged adverse actions that occurred <u>before</u> the only protected activity in this case -- the filing of this suit -- are irrelevant to proving retaliatory animus arising from the protected activity.

### 2. Undisputed evidence refutes any inference of causation

Furthermore, as ManTech noted in its opening brief, there is other undisputed evidence that refutes any inference of causation between the filing of this action and ManTech's decision to terminate the employment of either Kevin Cody or Muge Cody:

1. After learning of this suit, ManTech gave bonuses to both Kevin and Muge Cody, and gave Muge Cody a salary increase as well. These rewards undercut any inference that the subsequent termination of either Cody was caused by the filing of this suit. The Codys fail to respond to this point.

2. It is undisputed that ManTech eliminated Kevin Cody's position and no replacement has been made. "In a reduction-in-force case, there is no adverse inference to be drawn from an employee's discharge if his position and duties are completely eliminated.... If [plaintiff] cannot show that [defendant] had some continuing need for his skills and services in that his various duties were still being performed, then the basis of his claim collapses." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1287 (9th Cir. 2000) (quotation marks and citations omitted). The Codys' only response is to argue, nonsensically, that ManTech did not terminate Kevin Cody as part of a reduction in force. But a reduction is a reduction regardless of whether it involves one employee

6

or hundreds. The essential point remains that a retaliation claim collapses where the employer had no continuing need for (or could no longer afford to employ) someone to perform the plaintiff's duties.

3. The Army's elimination of the Program Manager position is an intervening event that severs any causal connection between Muge Cody's filing of this suit and her discharge. The Codys deny that it was an intervening event, again arguing that ManTech somehow triggered the Army's action by placing Ms. Cody on administrative leave. This argument fails for the reasons already discussed.

4. The fact that ManTech discharged Kevin Cody and Muge Cody at different times and for different reasons undermines any inference that ManTech retaliated against both of them for having engaged together in the same protected activity. *See Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 349 (4th Cir. 2014). The Codys make no response to this point.

5. The fact that ManTech terminated the employment of Nate Webster, the Acting Program Manager on the MRAP Contract, at the same time that it discharged Muge Cody forecloses any conclusion that her discharge was retaliatory. *See Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 723 (4th Cir. 2013). The Codys' only response is an *ipse dixit* denial: "The sufficiency of the evidence … is not altered by the fact that ManTech terminated Webster at the same time it terminated Muge Cody." (Codys' Opp. at 26).

### 3. Neither "but for" nor "contributing factor" causation is established

The evidence in this case is patently insufficient to establish that the filing of this suit was the "but for" cause of either Cody termination as required under the FCA, *i.e.* that the termination "would not have occurred but for" the filing of the suit. The Codys cannot dispel the undisputed evidence that Kevin Cody's discharge was caused by ManTech's need to reduce its overhead costs

7

and that Muge Cody's discharge was caused by the Army's elimination of the Program Manager position from the MRAP Contract. There is no rational basis for concluding that, absent the filing of this suit, either of the Codys would have escaped discharge. Accordingly, the Court should enter judgments as a matter of law on behalf of ManTech on each FCA retaliation claim.

The evidence is also insufficient for a reasonable jury to find causation under the shifting burden of proof specified by the DCWPA. The time gap between the disclosure of this suit and their respective terminations is too great to permit any inference of causation and there is no other relevant evidence that establishes a causal link. To the contrary, all of the relevant evidence refutes the existence of a causal link and, instead, establishes that ManTech "would have taken the same action[s] in the absence of any protected behavior." *Wiest v. Tyco Elec. Corp.*, 812 F.3d 319, 333 (3d Cir. 2016) (employer entitled to judgment where uncontroverted facts negated any possible inference of causation); *see Puffenbarger v. Engility Corp.*, 151 F. Supp. 3d 651, 661 (E.D. Va. 2015) (granting summary judgment where "no rational juror could conclude that plaintiff's [protected activity] was a but for cause of the putative unfavorable personnel action.").

The Codys argue that "*Puffenbarger*, is a 'but for' standard case." (Codys' Opp. at 22-23). This is not so. *Puffenbarger* involved a retaliation claim under the Sarbanes-Oxley Act which has the same contributing factor standard, and shifting burden of proof, as the DCWPA. Judge Ellis made the important point that "but for" causation remains the ultimate standard once the defendant employer presents evidence of its legitimate reason for taking the employment action at issue:

> Although the causation requirement for plaintiff's prima facie case need only show that the protected activity was a *contributing* factor to the unfavorable personnel action, once the burden shifts to defendant to rebut plaintiff's prima facie case, there is a *but for* standard of causation, as defendants may prevail by "demonstrating by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." *Welch* [ *v. Chao,* 536 F.3d 269,] at 275 [(4th Cir.2008)]. It is assumed for purposes of summary judgment that the protected activity was a *contributing* factor to the putative unfavorable

8

personnel action; analysis here focuses sharply on but for causation.

151 F. Supp. 3d at 661 n. 8 (emphasis in the original). Judge Ellis concluded that defendants were entitled to summary judgment "because the undisputed record evidence confirms that defendants have rebutted plaintiff's prima facie case 'by demonstrating by clear and convincing evidence that [Engility] would have taken the same personnel action in the absence of the protected activity.'" *Id.* at 661 (citation omitted). Judge Ellis then restated this conclusion with reference to the "but for" standard of causation: "Put differently, no rational juror could conclude that plaintiff's reporting of the Duckrey PTO cash out was a but for cause of the putative unfavorable personnel action." *Id.* The same chain of analysis applies in this case and it produces the same conclusion: in light of the undisputed evidence, no rational jury could conclude that the filing of this suit was the "but for" cause of either Cody discharge. Thus, the Court should also enter judgments for ManTech as a matter of law on each DCWPA retaliation claim.

### B. The Evidence Of Emotional Distress Damages Is Insufficient

Significantly, the Codys provide no response to ManTech's argument that the evidence they adduced is insufficient to support any award of emotional distress damages; they argue only that the awards that the jury made were not excessive or against the clear weight of the evidence. The reason for their conspicuous silence on the sufficiency of their proof is clear – they have no good response.[4]

---

[4] Moreover, "[l]itigants ignore arguments in dispositive motions at their peril." *United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 842 (D. Md. 2016). *See, e.g., Muhammad v. Maryland*, No. ELH–11–3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012) ("[B]y failing to respond to an argument made in a motion to dismiss, a plaintiff abandons his or her claim."); *Wainright v. Carolina Motor Club, Inc.*, No. 1:03 CV 01185, 2005 WL 1168463, at *13 (M.D.N.C. Apr. 27, 2005) ("Plaintiff's failure to argue this claim is tantamount to abandonment of the claim."); *see also Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may

Because neither of the Codys claimed any medical or psychological treatment, any purchase of medications, any impact on their behavior, or any physical consequences caused by their terminations, their respective damages claims for emotional distress fail for lack of evidentiary support. *See Doe v. Chao*, 306 F.3d 170, 181 (4th Cir. 2002) (reversing award of damages for emotional distress); *Peckey v. Bank of America, N.A.*, No. RDB-14-433, 2016 WL 6951940, at *2 (D.Md. Nov. 28, 2016) (denying reconsideration of summary judgment on plaintiff's claims for mental and emotional distress damages).

## II. MANTECH IS ENTITLED TO A NEW TRIAL

### A. The Verdict Is Against The Weight Of The Evidence

Given the multiple deficiencies in the evidence of causation, the jury's verdicts are against the clear weight of the evidence and ManTech is entitled to a new trial on the issue of liability.

### B. The Damages Award Is Excessive And Should Be Remitted

The Codys argue that the jury's awards of $500,000 to Kevin Cody and $300,000 to Muge Cody for emotional distress are not excessive. But they do not gainsay that an award of "substantial compensatory damages must be proportional to the actual injury incurred." *Hetzel v. Cnty. of Prince William,* 89 F.3d 169, 173 (4th Cir. 1996). They contend that prior awards are an aid and may be reviewed to determine whether an award of damages is excessive. They proceed to cite 15 cases in which various federal and state appellate courts have upheld compensatory damages awards of $300,000 or more. But only one of these cases, *Bennett v. R & L Carriers Shared Servs., LLC*, 492 F. App'x 315 (4th Cir. 2012), is from the Fourth Circuit and that case involved a claim for malicious prosecution, not retaliation or employment discrimination.

---

treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).

10

In contrast, ManTech cited four employment cases, two from the Fourth Circuit and two from district courts in Virginia, in which the courts remitted six figure awards for emotional distress that were based – as are the Codys' claims -- on nothing more than the plaintiff's professed distress. This Court can decide for itself which of these precedents are the sounder guide for determining the excessiveness of the awards made in this case.

WHEREFORE, ManTech again respectfully submits that the Court should grant it judgment as a matter of law and dismiss the retaliation claims of Kevin Cody and Muge Cody under both the FCA and the DCWPA. The Court should also vacate the jury's awards of compensatory damages to each of the Codys. In the alternative, the Court should grant ManTech a new trial because the jury's verdicts are against the weight of the evidence. Finally, in the alternative, the Court should remit the jury's damages awards and grant ManTech a new trial nisi remittitur.

Dated: January 9, 2017 Respectfully submitted,

/s/ Christine N. Walz
Christine N. Walz (VSB #79181)
Steven D. Gordon (*Pro Hac Vice*)
Holland & Knight LLP
800 17th Street, NW, Suite 1100
Washington, DC 20006
(202) 955-3000  (202) 955-5564 (fax)
christine.walz@hklaw.com
steven.gordon@hklaw.com

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of January, 2017, the foregoing Defendant's Reply Brief In Support of Its Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial was served by ECF on:

Lauren A. Wetzler
Richard W. Sponseller
United States Attorney Office
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3752
(703) 299-3983
Lauren.wetzler@usdoj.gov
*Attorney for United States of America*

David Lawrence Scher
John Thomas Harrington
Robert Scott Oswald
The Employment Law Group PC (DC)
888 17th Street, N.W.
Suite 900
Washington, DC  20006
(202) 331-2883
(202) 261-2835 (fax)
dscher@employmentlawgroup.net
tharrington@employmentlawgroup.net
soswald@employmentlawgroup.net
*Attorneys for Plaintiffs Kevin Cody and Muge Cody*

                                                                                              /s/
                                                          Christine N. Walz

#49180550_v1